IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER GRANDISON, SR.<br>231 Castlerea Road<br>Avondale, PA 19311 | : <br> : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | No. _____ |
| CITY OF PHILADELHIA,<br>PHILADELPHIA POLICE DEPARTMENT<br>1515 Arch Street, 17th Floor<br>Philadelphia, PA 19106<br>    and<br>CHERELLE PARKER, MAYOR<br>1515 Arch Street, 17th Floor<br>Philadelphia, PA 19106<br>    and<br>KEVIN BETHEL, COMMMISSIONER<br>400 N. Broad Street<br>Philadelphia, PA 19130 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Christopher Grandison, Sr. (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against the City of Philadelphia, Philadelphia Police Department, Cherelle Parker (Mayor), and Kevin Bethel, Commissioner (*hereinafter* referred to collectively as "Defendants") for violations of Age Discrimination in Employment Act of 1967 ("ADEA" – 29 U.S.C. §§ 621 *et. seq.*) and Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania. As to any claims requiring administrative exhaustion under the EEOC or PHRC, Plaintiff properly exhausted such requirements and timely files this lawsuit.

**PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant City of Philadelphia, Philadelphia Police Department ("Defendant City" if referred to individually) is the sixth-most populous city in the United States, and it operates the nation's fourth-largest police department in the nation.

8. Cherelle Parker ("Defendant Parker" where referred to individually) is a politician who was elected 100th mayor of Philadelphia. She was sworn into office in the aforesaid mayoral role on or about January 2, 2024.

9. Kevin Bethel ("Defendant Bethel" where referred to individually) is the current Police Commissioner. Defendant Bethel was appointed to be the Police Commissioner by Defendant Parker in January of 2024.

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is a 62-year-old, African-American (black) man.

13. Plaintiff was hired by Defendant City on or about August 13, 1993; and in total, Plaintiff has worked for Defendant City for approximately thirty-two (32) years.

14. Plaintiff has been *and remains* a highly-credentialed, outstanding law enforcement officer of Defendant City for more than 3 decades (having worked in many capacities).

15. From a law enforcement perspective, Plaintiff is extremely skilled, very versatile, and has held the position of Lieutenant since in or about March of 2017 (for the last approximate 7.5 years).

3

16.     As of in or about April of 2023, a civil service list was published ranking Lieutenants for potential promotion to Captain. This April 2023 civil service list is hereinafter referred to as the "April 2023 List." The April 2023 List was disseminated (and available) on or about April 28, 2023.

17.     There were more than 50 Lieutenants ranked on the April 2023 List. And the April 2023 List *only identifies ranking by examination score*, but there were other permissible factors to be considered for promotion.

18.     Other (typical) factors to consider in promotion can include interview(s) evaluation (as interviews weigh heavily), veterans' status, language fluency, if a family member was killed in the line of duty, and other considerations. The April 2023 List identified candidates for promotion consecutively based upon exam-passing applicants (to provide an "eligible list" for promotional consideration), subject to other considerations mentioned *supra*.

19.     The April 2023 List constitutes public information, and the actual list of rankings – as publicized – was as follows:

| Rank | Full Name |
|---|---|
| 1 | Waters III, Joseph |
| 2 | Robbins, Kelly |
| 3 | Graziano, John |
| 4 | Higginson, Louis |
| 5 | Burke, Walter |
| 6 | McKinney, Kenneth |
| 7 | Ganard, Anthony |
| 8 | Mcculum, Stuart |
| 9 | DiDonato, Scott |

4

| 10 | Gress, Brian |
|---|---|
| 11 | Pastman, Scott |
| 12 | Grandison, Christopher |
| 13 | Acavino, Jr., Joseph |
| 14 | Lee, Michael |
| 15 | Johnson, Anesha |
| 16 | Martin, Massi |
| 17 | Woo, Tony |
| 18 | White, Calvin |
| 19 | Harling, Juaneka |
| 20 | Mella, Enique |
| 21-55 | NAMES OMMITTED |

20. Plaintiff received an examination score of 87.05, and he was ranked #12 on the April 2023 List.[1]

21. Via a Memorandum dated October 13, 2023, from Timothy Linneman ("Linneman"), a Captain, Plaintiff was informed he was being "considered for promotion" and was to undergo a "PBI check" (along with all other promotion candidates). This is a Police Board of Inquiry background review.

22. ***It has been announced that at least 13 Lieutenants would be promoted*** to the position of Captain, and others as vacancies opened. Because Plaintiff was in the top exam-scoring

---

[1] Technically, Plaintiff was actually considered #11 on the April 2023 List because John Graziano on the April 2023 List was deemed disqualified from consideration (following his exam results).

13 candidates (and ranked #12 on the April 2023 List), he was identified in writing (in the October 13, 2023) as being reviewed for a promotion.

23.  As of October of 2023, John Stanford ("Stanford") was the Acting Police Commissioner (a role succeeded by Defendant Bethel, who was actually appointed to the role). Staford, however, remains employed by Defendant City and currently serves as the First Deputy Commissioner, Field Operations for Defendant City.

24.  By November 7, 2023, Defendant Parker had prevailed in the Philadelphia mayoral election. She officially began her term on or about January 1, 2024.

25.  Defendant Parker elevated Defendant Bethel to the position of Police Commissioner contemporaneous to her term commencement (in January of 2024).

26.  As a result of Defendants Parker and Bethel knowing as of November of 2024 that they would oversee Defendant City's Police Department, they upon information and belief sought to review (and intervene in) promotions and/or elevations to Captain positions. It was understood that they were reviewing, evaluating, and giving input and/or decision making into who in 2024 may be elevated or promoted.

27.  It had originally been announced that promotions of 13 Lieutenants to Captain would occur prior to December of 2024. However, this did not occur as a result of desired review and oversight by Defendants Parker and Bethel.

28.  By email dated February 14, 2024, Plaintiff was notified that he was scheduled for a "Pre-Promotional Interview on Tuesday, February 20, 2024." Plaintiff was sent this email from Deborah Francis ("Francis"), Chief Inspector of Defendant City.

29. Because the City of Philadelphia used what is commonly known as the "Rule of 5" to hire, at least 20 Lieutenants were interviewed prior to the spring of 2024 (for promotions to Captain).

30. As explained *infra*; to avoid promoting beyond the 10th ranked Lieutenant, Defendants did not apply the Rule of 5 to Captain promotions (on this specific occasion) and separately decreased the number of promotions they were going to engage in for Captain positions. This was a complete aberration from normal practices.

31. By March of 2024, it was announced that only nine 9 Lieutenants were being promoted to the positions of Captain. The newly-promoted Captains included 9 of the first 10 highest-scoring candidates on the April 2023 List (as one candidate was upon information and belief disqualified from consideration). In the interest of clarity, Defendant City promoted the first 9 highest-scoring Lieutenants to the position of Captain (excluding a single applicant in the first 10 for ineligibility of that person for other reasons).

32. As of March 2024, Layton informed Plaintiff that he was not being promoted in the March 2024 round of promotions. Plaintiff was, however, assured he would continue to be eligible for promotional consideration prior to the April 2023 list expiring on or about April 28, 2025 (as in accordance with civil service regulations, it is a 2-year eligibility list). Plaintiff was also informed he was a great candidate.

33. The manner in which only 9 Lieutenants were elevated to Captain in March of 2024 (as aforesaid) was unusual, suspect, and a deviation from practice, policy, and prior communications. By way of elaboration and example(s):

    (1) It was announced there would be 13 promotions to Captain, not 9. There was a dire police, city and business need for at least 13 promotions. Ordinarily, all announcements are (and were) heeded as to the number of promotions.

(2) In other categories of promotions (such as to Sergent, Detective, or Lieutenal), Defendant City was actually promoting to and filling <u>the announced number</u> of positions (expected to be filled).

(3) To avoid considering any candidates above the top 10 exam-scoring candidates on the April 2023 List, Defendant City <u>deviated</u> from its normal promotion practices. Prior to Captain promotion consideration, Defendant City used the "Rule of 5" to select the best candidates in groups of 5 (based upon numerous factors). Defendant City did not apply the Rule of 5, which would have resulted in Plaintiff's consideration and promotion. <u>Through 2025 and thereafter</u>, Defendant City c*ontinued to use the Rule of 5 for other promotions* within the Police Department (for other non-Captain police job titles). Thus, as of the spring 2024, Defendant had deviated from its hiring practices ***utilizing only exam score*** (and only as to Captain positions) to avoid hiring any applicant outside of the first 9 eligible candidates on the eligibility list.

34. Plaintiff and other Lieutenants were led to believe (and expressly told by management hierarchy) that other Lieutenants would be promoted to Captain through 2024 and 2025 prior to the April 28, 2025, expiration of the April 2023 List.

35. In prior years, elevations to status of Captain within Defendant City took place over multiple rounds during a 2-year eligible list. In total, between the multiple rounds, it was typical to have approximately (and no less than) twenty (20) or more Captains promoted (per eligibility list).

36. Thus, although Plaintiff was troubled by the proverbial whiplash in his non-elevation to Captain in late 2023 and again in the spring of 2024, he took comfort in knowing that he was going to be next in line for promotion in the coming year (between the spring of 2024 and spring of 2025).

37. Throughout 2024 and 2025, there was a significant shortage of Captains, in addition to numerous vacancies opening for additional Captains. By way of just some examples, in mid-2024 to late 2024, Captains such as Anthony Ginaldi, Danielle Vales, and Daniel Angelucci were

8

separating from Defendant City. These are just a handful of examples, as many other Captains ceased working in such roles as well.

38. Between 2024 through 2025, some units or districts were only being covered by a single Captain (despite an allocation and need for several), and other units or districts were operating with no Captain(s). The full hiring for all positions and ranks other than Captain was a complete anomaly <u>and</u> a serious detriment to departmental operations (as to the April 2023 List for all job titles).

39. Throughout 2024, Defendant Bethel was confirming that by March of 2025, he was ensuring "all ranks" were going to be promoted while mentioning shortages and staffing needs for various roles, including "Captains." Defendant Bethel (and other management) mentioned this in numerous meetings.

40. There were so many Captain vacancies (more than a dozen in total) between the spring of 2023 through the spring of 2024 that Lieutenants ranked #11 - #20 on the April 2023 List expected imminent promotions. Several were even buying uniform components, such as Plaintiff because they only receive about one (1) week of notice prior to elevation (when it occurs). *Elevation is not subject to an application process, but rather, selection based upon qualifications and vacancies by Defendants.*

41. By late 2024, there had been a need, shortage, and allocation for <u>at least</u> another 10-15 Captains depending upon timeframe in the year (beyond those promoted in March of 2024). Based upon budget allocation, <u>vacancies</u>, departures, assurances of hiring, staffing shortages (as to Captains), business necessity, and numerous assurances of essential Captain elevations - - Lieutenants within Defendant City (including Plaintiff) expected at least another 10-15 promotions from 2024 - 2025 and prior to the April 2023 List expiring (***in April of 2025***).

42. To Plaintiff's complete shock, Defendant City announced in March of 2025 *inter alia*:

- <u>15</u> officers would be promoted to Lieutenants (and <u>29</u> officers would be interviewed and considered for these 15 promotions).

- <u>58</u> officers would be promoted to Sergeants (and <u>72</u> officers would be interviewed and considered for these 58 promotions).

- <u>12</u> officers would be promoted to Detectives (and <u>26</u> officers would be interviewed and considered for these 12 positions).

43. Basically, as of March of 2025, despite representing previously and repeatedly representing that "all ranks" would be promoted including "Captains," Defendant City was only promoting positions other than Captains.

44. Evidencing the completely disparate application of protocols, policies, and promotion practices to the group of "Captains," Defendants:

- Announced they were *resuming usage of the Rule of 5 <u>as to all other non-Captain promotions</u>*.

- Were not just considering the highest-scoring applicants for promotion, but rather, were interviewing <u>nearly double</u> the potential candidates for each position irrespective of score.

45. Between 2024 – 2025, Defendants were filling all vacant positions within Defendant City's police department *except for position of Captain*.

46. On or about April 28, 2025, the April 2023 List expired, and Plaintiff became ineligible for promotion(s).

47. There were multiple retaliatory reasons why Defendants so grossly deviated from police practices, city practices, promotions, and had refused to fill budgeted-for vacancies. They include but are not limited to:

(1) Numerous Lieutenants ranked #11 - #20 had engaged in complaints of impropriety or unlawful practices, discrimination or complaints of retaliation.

        Thus, Defendants changed hiring practices and refused to fill vacancies as to Captains to avoid hiring perceived troublemakers (who engaged in statutorily protected concerns).

(2) Between 2014 – 2022, Plaintiff had made numerous complaints of racial discrimination in the workplace. He had complained about being called a "nigger," being given discriminatory or retaliatory evaluations, and about unlawful and discriminatory directives to stop or search citizens based solely upon race. Plaintiff's complaints caused significant commotion and change(s) internally with personnel and policies.

(3) As aforesaid, others within the #11 - #20 range on the 2023 April 2023 List had also engaged in protected legal activities (such as unlawful practices or discrimination concerns).

(4) Defendant Parker was also arrested in 2011 for driving under the influence of alcohol after driving the wrong way on a one-way street. She lost her appeal in 2015. Anesha Johnson ("Johnson"), #15 on the April 2023 List, had experienced animosity by Defendant Parker for (as a prior friend and sorority sister), ***not impermissibly assisting Parker at time of arrest with her law enforcement influence*** (to aid in avoiding prosecution). This caused them to have an estranged relationship.

48.    Until April of 2025, vacancies for Captain were not filled for unlawful retaliatory reasons. No matter how much need there was for Captain promotions, Defendants did not want to hire certain troublemakers or complainants (such as Plaintiff) ***who would have been required to be hired if others beyond #10 were elevated***.

49.    Determinative factors in Plaintiff's non-promotion through April of 2025 was also because of discriminatory reasons, premised upon age and race. By way of explanation(s):

(1) As to Captain positions, Defendants focused on hiring Captains substantially younger than Plaintiff (in his 60s). Instead, Defendants hired Captains who were typically at least (approximately) 20 years younger than Plaintiff. Older employees above the 10th rank were not considered for elevations as Captain(s) due to their age (including Plaintiff).

(2) There was a history disparage treatment demographically in Defendants' hiring, retaining, or elevating based upon age in the police department over the last several years.

11

(3) Plaintiff was more qualified, versatile, and accomplished than nearly every younger Lieutenant who was in fact promoted in lieu of him.

(4) Plaintiff had – for a long period of time (spanning years) – requested a transfer to different departments (such as detective, etc…). Plaintiff was a Lieutenant in patrol. To enhance upward mobility, it was well known that experience outside of patrol in other units, divisions or departments is very important. Plaintiff was not considered for any transfer requests despite that younger and less experienced Lieutenants were regularly transferred.

(5) Plaintiff was treated more harshly, was more scrutinized, and given less flexibility than younger law enforcement officers. There was simply a culture of treating older officers (such as Plaintiff) more poorly and as if there was no need to appease them with any requests or flexibility unlike younger officers.

(6) Over the last several years, there was also a culture of race-based hiring, where race was a material consideration in hiring. As to higher-level officer positions (such as Captain and above), non-black and non-minority officers were given preference(s).

(7) The overwhelming majority of the officers elevated to Captain were non-black (as Plaintiff is a black male). And this was despite that Plaintiff was more qualified for promotion than non-black officers elevated or promoted.

(8) When non-black leadership engaged in misconduct, abuses, racial discrimination or other forms impropriety, they were given lesser discipline, transferred, and/or were subjected to favoritism (as opposed to black leadership level employees who faced harsher discipline or immediate termination.

50.    Plaintiff was not elevated or promoted through April of 2025 because of complaints of discrimination, complaints of illegality, for retaliatory reasons, and due to discrimination on account of his race and/or age.

51.    Plaintiff was even being informed by higher-level management Bethel had been sharing his intent (to them) to not promote despite need because of his dislike for those on the April 2023 list (for illegitimate, non-business-related reasons).

52.    As a direct, proximate and actual cause of Defendants' retaliation and discrimination, Plaintiff suffered significant financial losses by non-promotion to his immediate

and future finances, as well as to his retirement and benefit entitlements. Moreover, Plaintiff has suffered significant emotional distress.

53. Plaintiff's non-promotion for the reasons outlined in this lawsuit were at the behest, direction, and coordination of Defendants Parker and Bethel. They are therefore individually liable for such actions in their individual capacities (as named in this lawsuit).

### Count I
### Violations of the Age Discrimination in Employment Act ("ADEA")
**(Age Discrimination)**
**- Against Defendant City Only -**

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff was not promoted because of his age to the position of Captain prior to April 2025 when the April 2023 List expired.

56. Defendant City's actions as outlined in this lawsuit constitute a violation of the ADEA.

### Count II
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
**(Discrimination & Retaliation)**
**- Against Defendant City Only -**

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff's non-promotion the position of Captain prior to April of 2025 because of his race and/or complaints of racial discrimination constitutes a violation Title VII.

**Count III**
**Violations of 42 U.S.C. § 1981 (through 42 U.S.C. § 1983)**
**(Discrimination & Retaliation)**
**- Against All Defendants -**

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60. Defendants failed to promote Plaintiff because of his race, and Defendants' actions were:

- A matter of policy or decree from Defendant City itself as orchestrated by the highest-level executives of Defendant City (including the Mayor);

- Premised upon racial considerations.

61. Defendants' actions as aforesaid of creating a culture of discrimination, making discriminatory decisions from the highest levels of executive management, and not promoting Plaintiff because of his race constitute violations of 42 U.S.C. § 1981.

**Count IV**
**First Amendment Retaliation (through 42 U.S.C. § 1983)**
**(Retaliation)**
**- Against All Defendants -**

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63. Plaintiff engaged in numerous complaints that constitute First Amendment protected activities.

64. Plaintiff complained about unlawful practices of racial discrimination, racial profiling, and unconstitutional practices towards citizens that were known violations of the constitutional rights of such citizenry. Plaintiff also complained of racial discrimination to various levels of management about work conditions and profiling. *See e.g. Wright v. City of Salisbury,* 656 F. Supp. 2d 1013, 1017 (E.D. Mo. 2009)(denying motion to dismiss concerning police officers

14

First Amendment protected speech of complaining about police practices and policies he believed were unethical and illegal); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1075 (9th Cir. 2013)(complaints by a police officer of internal misconduct are First Amendment protected activities); *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 125 (2d Cir. 2005)(reversing district court's grant of summary judgment explaining any concerns of discrimination in a workplace are protected speech under the First Amendment and a matter of public concern).

65.   Plaintiff was never transferred, subjected to animosity, and was not promoted because of his prior First Amendment protected activities during his period of employment. These actions as aforesaid constitute First Amendment retaliation.

## Count V
## Violations of the Pennsylvania Human Relations Act ("PHRA")
**(Discrimination & Retaliation)**
**- Against Defendant City Only -**

66.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67.   Plaintiff re-incorporates and re-alleges Counts I – III herein, as such actions constitute identical violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.   Defendants are to promote Plaintiff to the position in which he should have been elevated and make him entirely whole;

B.   Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C.	Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;[2]

D.	Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

E.	Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.	Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
Allison A. Barker, Esq.
Eight Neshaminy Interplex, Suite 210
Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)

Dated: October 10, 2025

---

[2] Plaintiff seeks punitive damages only against the individual defendants to this lawsuit.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Christopher Grandison, Sr. | : | CIVIL ACTION |
| v. | : | |
| City of Philadelphia, Philadelphia Police Department, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| 10/10/2025 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / [X] **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.  Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
[X] 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **see certification below**
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.  Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / [X] **does not** have implications beyond the parties before the court and ☐ **does** / [X] **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X]  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GRANDISON, SR., CHRISTOPHER

**(b)** County of Residence of First Listed Plaintiff: Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
CITY OF PHILADELPHIA, PHILADELPHIA POLICE DEPARTMENT, ET AL.

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADEA (29USC621); Title VII (42USC2000)

Brief description of cause:
Violations of the ADEA, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 10/10/2025       SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____